# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CORNELIUS WOODS,

    Plaintiff,

v.

CHICAGO BOARD OF EDUCATION,

    Defendant.

No. 03 C 8669
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

The case before me involves Plaintiff Cornelius Woods ("Woods"), who worked at Robeson High School, a Chicago Public School. During Woods' tenure there, James Breashears ("Breashears") was the principal, and was charged with supervising all employees at the school. Woods was a Grade II Engineer beginning in very late 2001 or early 2002. His immediate supervisor was Anthony Dixon ("Dixon") whose title was Engineer Custodian Supervisor. Woods—the night engineer—began his tour at 2 p.m and rarely was in the office, working mostly around the building. Dixon worked from 6 a.m. until 2 p.m. Due to under-staffing, Woods was the only Grade II Engineer at Robeson and the main backup for Dixon. Woods spent most of his time on heating (60%) with plumbing (20-30%) and miscellaneous tasks like painting taking up the rest of the time.

From October 9 through November 4, 2002, Woods did not report for work. Payroll records show that he was absent without leave on October 4, 7, and 8. He was also absent without leave from November 20 through December 8, 2002. Woods says that, at about that time, he began drinking heavily and was on a deep binge.

Absences are sometimes permitted but, the employee seeking to be absent must apply for permission. Woods had done this earlier in his career when he obtained a medical leave for back pain. In addition, Woods had a prior suspension of 10 days for failure to inform his employer of absences and lateness when at DuSable in 1998.[1] Woods did finally get leave to be absent in late 2002, but it only became effective as of December 9.

The absences placed burdens and hardship upon the Robeson maintenance staff. Principal Breashears had no substitute for Woods and needed someone to perform Woods' work; accordingly, he notified the Board's Labor and Employee Relations department. By December 16, the Board notified Woods that it was considering a recommendation to terminate his employment. Woods had a hearing with a union representative. The hearing established Woods' absences and the Board fired him.

Woods did not request an accommodation for disability under the Americans with Disabilities Act ("ADA") until *after* this hearing (but he did so before he was terminated). The accommodation he requested was to work in a school that did not permit smoking or painting. The Board's employee in charge of accommodations had sought some information from Woods. By the time she received it, however, she learned that Woods had already been terminated, so she closed the file.

---

[1] The Chicago Board of Education ("Board") has a typical discipline code for its employees. Excessive absence is prohibited and repeated acts of this sort are especially sanctioned. Failure to apply for an approved leave after ten consecutive days of absence is a separate violation.

The prior disciplinary action against Woods is significant in that it constitutes proof that he knew that merely calling in and telling someone at the school that he would be absent was not sufficient. In the prior case he had called in about each of his absences and was disciplined nonetheless because simply calling in is not adequate under the rules. These rules are reasonable.

2

Woods filed a charge with the Chicago Commission on Human Rights alleging discrimination under the ADA and failure to reasonably accommodate the disability (bipolar disorder and asthma). He did not allege retaliation, which is a part of his complaint here. After an investigation, the Commission found no violation. Then Woods filed this lawsuit; he has prosecuted it *pro se*.

For purposes of this motion, the Board's Motion for Summary Judgment, I will proceed on the assumption that Woods is bipolar and asthmatic. The fact that he has those two conditions does not, by itself, establish that he is disabled. He must show a connection between the condition and limitation on major life activities. *Toyota Motor Mfg v. Williams*, 534 U.S. 184, 198 (2002). And the limitation must be broader than a condition that would preclude performance of a narrow class of jobs. *Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992); *Knapp v. Northwestern Univ.*, 101 F.3d 473, 480-81 (7th Cir. 1996).

The request Woods made was for a job where neither smoking nor painting was permitted. The only inference that can be drawn from this is that his conditions affected his breathing, which, obviously, is a major life activity. But his asthma, Woods testified, was triggered by the bleaches used at Robeson and at no other school. His asthma does not affect any other major life activity. He does say that attacks were spurred by chemicals, smoking, and ingestion of some foods, which he avoids. When nothing triggers an asthma attack then Woods is unimpaired, not disabled.

Woods does treat his asthma, and the treatment is successful, though relief is not immediate, sometimes taking a half hour.

There is no evidence that his condition, mental or physical, interferes significantly with working, another major life activity. It is difficult to see how he could claim it does, since there is just one place he has worked that triggered either physical or mental illness. A condition that impairs the ability to work at a narrow class of jobs or at one particular place is not a disability within the meaning of the ADA. *Haynes v. Williams*, 392 F.3d 478, 483 (D.C. Cir. 2004) (holding that "[i]f [the plaintiff] could have avoided the itching that seriously affected his sleep simply by working at a different location, then he was not 'substantially limited' in the major life activity of sleeping"); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 (7th Cir. 1998) ("To demonstrate a significant limitation on her ability to work, it is not enough for the plaintiff to show that her impairment 'prevented [her] from performing one narrow job for one employer.'"). In short, the rule is that a condition which prevents a person from working at one limited location does not significantly interfere with a major life activity and thus is not covered by the ADA.

There is no dispute that this state of affairs exists in Woods' case. He says so himself. He has sworn that at the time of his deposition he was working as a night maintenance man at Glenwood School doing work similar to his prior work. He had no problems. Robeson was the only school he worked at where chemicals caused him a problem. Prior to Robeson, he testified that "I've been in this field all my life . . . so I don't have no job problems, you know, performing my duties." So he can be a Grade II Engineer (except at Robeson) and this means that under the law he is not disabled.[2]

---

[2] Woods also believes that Dixon's smoking was damaging to him, but he did not ask to go to a school where smoking did not occur and, of course, he and Dixon worked non-overlapping shifts and were only "sporadically" present at the same time.

4

Woods also says his firing was a retaliation for his claim of disability discrimination. However even a cursory examination of the timing of events destroys his case. To be liable here, the Board must have fired Woods because of his disability, and the disability must have been known to them. But the Board started to fire him well before he claimed disability. He claimed disability only *after* the hearing on his unauthorized absences was concluded. Woods attended the Board hearing, and must have realized that it went very badly for him. It is reasonable to infer that this motivated Woods' decision to claim disability. Moreover, he did not claim a legal disability at all. His claim was, essentially, that he did not want to work at Robeson because of his asthma. Until after the hearing, no one employed by the Board considered him disabled—not his principal, not his immediate supervisor, and not the person or persons who conducted his hearing. There was a clearly legitimate reason for terminating him—his absences. Given the timing of events, Woods cannot establish that this reason was a pretext.

There is, finally, a general claim of retaliation and harassment in the workplace arising out of Dixon's smoking and Woods' complaints about it. I think he has failed to meet the administrative requirements to make these claims, but they fail anyway. Complaining by a single individual about another single individual's smoking (in violation of Board policy) is not grounds for a retaliation claim under the ADA. *See Smith v. Fruin*, 28 F.3d 646 (7th Cir. 1994). Moreover, unwanted smoking by one person (who is rarely present when Woods was at work) is not severe or pervasive enough to constitute a hostile work environment under federal law. This leaves aside the fact that Woods could have, but did not, bid for a job at another school. Nor is there any evidence that he took the claims to higher Board authority.

What Woods' briefing on this motion demonstrates is that Woods begins with one story, and when he sees that it might not work, he changes or alters the story or the theory of wrongdoing. This is consistent with what started with a defense to a claim of unauthorized absences and, after hearing, turned into a different issue of accommodation for disability. In the briefing, new facts and new claims not stated in the deposition emerged or were stated differently than in the deposition. For example, Woods first swore that Breashears told Dixon to find something to burn Woods for (which is, in any event, inadmissible hearsay) on November 5, which was after the first series of days absent. It is not of much use to Woods as proof of pretext if said *after* the first long absence, because it proves nothing more than Breashears was upset about the absences, which was the reason Woods was fired. Woods then changes the date of the utterance to October 5, which is the first of the absence days. So his attempt to create direct evidence of pretext not only fails (as hearsay), it serves to confirm the pattern of shifting stories.[3] Woods seems unwilling to recognize that he admitted to being absent with proper leave for two long periods.

Further examples of his shifting stories are his new claims of age discrimination and violations of due process, never before raised in this case. Age discrimination was not raised in the administrative complaint, nor was denial of procedural due process. While the due process claim was not required to be raised administratively, its factual basis would have supported the disability claim that was raised. Moreover, it is more than two years since due process was

---

[3]In addition, neither Dixon nor Breashears were decision-makers, and there is no evidence that the Board official making the final recommendation was simply yielding to the will of school officials or was duped by them. Thus, this comment would fail to make the grade, even if not hearsay. *See Gorence v. Eagle Foods*, 242 F.3d 759 (7th Cir. 2001).

allegedly violated and this is beyond the statute of limitations. No reasonable trier of the facts could find for Woods on this record.[4]

The Chicago Board of Education's Motion for Summary Judgment is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 17, 2007

---

[4] There are additional factual materials submitted by Woods to support his claim. Some of these are statements by him that contradict what he said in deposition. A party facing summary judgment may not contradict his or her own deposition with later filed affidavits. The declaration from Woods' spouse is not notarized or signed under penalty of perjury and must be disregarded. The medical records are not properly offered either.

7